**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ABDON VALLES,

        Plaintiff,

vs.                                                               CIVIL NO. 03-1171 BB/LFG

CITY OF ALBUQUERQUE,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the City of Albuquerque's ("City") Motion to Compel [Doc. 35]. The Court considered the City's motion together with Plaintiff Abdon Valles' ("Valles") response [Doc. 38][1] and the City's reply [Doc. 41]. Oral argument is not necessary. This matter may be resolved based on the parties' submissions.

### Background

Valles filed a 42 U.S.C. § 1983 lawsuit against the City, Detectives S.A. Lopez, Robyn Burge, Gerald S. Maestas and B. Dilly,[2] stemming from a search warrant that was executed on July 25, 2003 at Valles' purported residence. Valles contends that the City has a custom or practice of using false information to obtain search warrants. He further asserts that the custom and practice is so widespread that it has the force of policy and deprived Valles of his Fourth Amendment right to be

---

[1] Plaintiff's response was mis-docketed as "Defendant's" response.

[2] The City filed a motion for summary judgment seeking to summarily dismiss Gerald Maestas. Valles did not respond to the motion for summary judgment, and the trial judge, the Honorable Bruce D. Black, set a show cause hearing for May 7, 2004, directing Valles to show cause why the lawsuit should not be dismissed against Maestas. Prior to the show cause hearing Valles entered a Notice of Dismissal Without Prejudice as to Defendants Lopez, Burge and Dilly [Doc. 15]. Further, on May 5, shortly before the hearing concerning Detective Maestas, Valles and Defendant Maestas filed a Stipulated Motion to Dismiss [Doc. 17], and on May 5, 2004, the Court entered an Order of Dismissal [Doc. 19] as to Maestas. Thus, the only remaining claim is against the City.

free of unreasonable searches and seizures. More specifically, Valles claims that the search warrant relied upon in this case was based on false allegations of drug sales involving Valles.

The City denies any constitutional violation or wrongful conduct and affirmatively contends that the City officers had probable cause to obtain and issue a search warrant. The City asserts that the search warrant was executed in a reasonable manner and in accord with court authority. The City contends that neither it nor its officers and employees violated any of Valles' constitutional rights.

**Present Motion**

In an effort to discover the existence of evidence supporting or refuting the claims, the City served interrogatories and requests for production on Valles. As a result of Valles' objection to certain interrogatories and requests, the City filed the present motion. In dispute are Interrogatory Nos. 24 and 26, as well as Request for Production Nos. 6, 9 and 12.

<u>Interrogatory No. 24</u> asks Valles to "Please identify the officers by name who have not been monitored as alleged in Paragraph 23 of your Complaint." In paragraph 23, Valles contends:

> Based on the actions of the Defendants, Plaintiff alleges that the City has adopted a policy of inadequately investigating, corroborating allegations of criminal wrongdoing and of executing search warrants in an unreasonable manner, and of monitoring its officers in the use of CI's.

In response to Interrogatory No. 24, Valles simply answered, "All officers who executed the warrants in Elias Gonzales, Rudy Duran and this matter."

The City now argues that it is entitled to know if a municipal employee committed a constitutional violation and whether a municipal policy or custom was a moving force behind the constitutional deprivation. <u>Myers v. Oklahoma County Bd. of County Com'rs</u>, 151 F.3d 1313, 1318 (10th Cir. 1998)(*citing* <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978). Further, the City contends that the specific identities of the officers are

2

necessary to assist the City in identifying any supervisory issues relating to Valles' claims of lack of supervisory responsibility.

Valles responds that at the time he filed the complaint, he was unsure of the identities of the officers who executed the warrant. Valles knew that Detective Steve Lopez submitted the affidavit for the warrant and that Burge and Dilly were present for the execution. Valles contends that, "Only recently did the Defendant identify all the other officers executing the warrant." (Doc. 38, pp. 1-2).

Valles further contends that, "Defendant has knowledge of who is and who is not a City employee," and, further, that Valles referred the City to the "Gonzales and Duran litigation" and, therefore, the City is able to glean the information from those lawsuits.

The response is insufficient. In this case, the only Defendant is the City of Albuquerque, as all individually named defendants have since been summarily or voluntarily dismissed by Valles. While paragraph 23 of the complaint is sufficient to alert the City that the basis of Valles' claim is that it has a policy of "inadequately investigating and corroborating allegations of criminal wrongdoing, of executing search warrants in an unreasonable manner, and of monitoring its officers in the use of CI's," the allegations of the complaint are not specific enough to provide the City with details concerning the supporting evidence to corroborate Valles' claims. Indeed, the broad statements in that paragraph are woefully insufficient to provide the detail which a party must have in order to adequately defend itself in a lawsuit.

Moreover, Valles must shoulder the burden of proof in this case. So as to allow the City a fair opportunity to evaluate the strength or weaknesses of the claims, to evaluate the case for settlement or to prepare to meet the proofs at trial, it must have something more than vague allegations that were set forth in paragraph 23 of Plaintiff's Complaint.

The Court acknowledges that notice pleading provisions are acceptable under the federal rules, but it is in the discovery stage that a party must "'fess up" and disclose the evidence that supports the allegations. It is entirely insufficient for a party to make bald assertions and then expect the opposing party to define the evidence that supports or refutes the complaining party's claims.

The very purpose of an interrogatory is "to ascertain facts, procure evidence, or secure information as to where pertinent information exists and can be obtained." Discovery Proceedings in Federal Court, 3d Ed., § 14.01 (1995). "[A]nswers to interrogatories must be responsive, full, complete, and unevasive" Miller v. Doctor's General Hospital, 76 F.R.D. 136, 140 (W.D. Okla. 1977).

Here, Valles' response to Interrogatory No. 24 fails to meet the standards required in formal discovery. Moreover, Valles' simple reference to other litigation is not sufficient to cure the defect.

> Answers to interrogatories ordinarily may not incorporate by reference information contained in documents outside the answers or in addenda. In particular, answers that incorporate allegations of pleadings by reference are improper.

Discovery Proceedings, at § 15.09; *see also* Martin v. Easton Publishing Co., 85 F.R.D. 312, 315 (E.D. Pa. 1980) (incorporation by reference is not a responsive answer). The handbook on discovery proceedings in federal court clearly illustrates this point.

> A plaintiff cannot avoid answering interrogatories by referring the defendant to the complaint, no matter how detailed the allegations in the complaint are. Nor may a plaintiff answer an interrogatory by merely repeating allegations in the complaint. Under Rule 33, interrogatories must be answered separately and fully under oath, unless objected to. Stabilus v. Haynsworth, Baldwin, Johnson and Greaves, P.A., 144 F.R.D. 258 (E.D. Pa. 1992).

Discovery Proceedings, at § 15.09, fn. 56.

It stands to reason that if an interrogatory may not be answered by simply incorporating by reference information contained in the complaint, the interrogatory cannot properly be answered in this case by simply referring the City to information contained in pleadings in other cases.

The Court overrules Valles' objection and directs him to separately and fully answer Interrogatory No. 24 within ten days after entry of this Order.

In <u>Interrogatory No. 26</u>, the City requests that Valles "indicate the date each warrant was executed in an unreasonable manner as alleged in Paragraph 23 of your Complaint. Also, for each warrant listed, please set forth the name and job title of the affiant." Valles responded by simply referring the City "to the <u>Duran</u> litigation and the <u>E. Gonzales</u> litigation."

For the foregoing reasons stated above, this response is insufficient. Valles' answer must be responsive, and unevasive. If he lacks knowledge or information (for example, the job title of the affiant), he may say so. However, Valles may not answer this interrogatory by simply referring the City to other litigation.

The Court overrules Valles' objections and directs him to fully respond to Interrogatory No. 26 within ten days after entry of this Order.

In <u>Request for Product No. 6</u>, City asks for "copies of all of your federal and state income tax returns for the last five (5) years, including all supporting forms, schedules, and work papers." Valles objected to the Request contending that he claimed no work loss and, therefore, that the documents were "irrelevant and unlikely to lead to the discovery of relevant evidence." Further, Valles asserted that the Request was unduly intrusive of his privacy.

The City argues Valles should be required to respond to this document request because it is relevant to issues of credibility and to Valles' challenges to representations made by Detective Lopez in his affidavit for search warrant regarding Valles' alleged drug trafficking and gang activity. The

City asserts that this evidence could be probative of Valles' representation that he owns a legitimate business, e.g., a car lot, from which he earns income because a tax return would reflect an inventory of vehicles, depreciation, gross sales, cost of goods sold, and/or net income. Tax returns could also show Valles' ownership interest in the house that was searched and be relevant to the question of whether Valles has standing to contest the execution of the search warrant.

Valles responded that 26 U.S.C. § 6103(a) provides that tax information "shall be confidential" and that he cannot be compelled to produce his tax records in a case where he does not seek damages for loss of wages. In addition, he argues that the City has other available means to discover the information it seeks regarding the legitimacy of his business. Valles also asserts that if the Court orders production of the tax records, it should do so only after a confidentiality order is entered.

In its reply, the City explained that Valles produced a redacted copy of the Real Estate Contract for his purchase of the car lot and a copy of the Assignment of the Real Estate Contract and Conveyance of Title for the residence in question. Valles redacted the down payment amount, the amount of the loan and the amount of the loan assignment for the interest in the residence at issue. The City then obtained unredacted real estate contracts from the Bernalillo County Clerk's Office, which revealed that Valles paid $20,000 in cash as a down payment for a $150,000 loan for the car lot, he assumed a mortgage loan in the amount of $71,541.57, and he was able to obtain re-financing for the house on a $92,099.34 loan. The City notes that Valles is a single male, with no college degree, who presently works as an electrician apprentice. Thus, the City argues that the tax records in this case are relevant to shedding light on whether Valles' income derives from illegal activities, United States v. Thomas, 913 F.2d 1111, 1115 (4th Cir. 1990), and the related question of whether Detective Officer made material misrepresentations in his affidavit in support of the search warrant.

6

Generally, courts will not compel taxpayers to disclose income tax return information merely because they are parties to a lawsuit, unless the taxpayer himself tenders an issue as to the amount of his income, e.g., requests for lost profits and/or income, damages to business or reputation.  *See* Sanderson v. Winner, 507 F.2d 477, 479 (10th Cir. 1974), *cert. denied*, 421 U.S. 914 (1975) (tax returns are not generally discoverable).  Notwithstanding a court's general view that it should not compel production of tax records, no absolute privilege exists preventing such discovery.  United States v. Bonanno Organized Crime Family, 119 F.R.D. 625, 627 (E.D.N.Y. 1988).

Courts have developed a two-pronged test to balance the liberal scope of discovery with the policy favoring confidentiality of tax returns.  "First, the court must find that the returns are relevant to the subject matter of the action.  Second, the court must find that there is a compelling need for the returns because the information contained herein is not otherwise readily obtainable."  Hilt v. SFC Inc., 170 F.R.D. 182, 189 (D. Kan. 1997).  The party seeking production of the tax information must show relevancy.  If that burden is met, the party opposing production must show that other sources exist from which the information is readily obtainable.  Id.  The party resisting discovery must affirmatively show that other sources exist from which a party can obtain the requested and relevant information.  Cotracom Commodity Trading Co. v. Seaboard Corp., 189 F.R.D. 655, 665 (D. Kan. 1999).

Here, the Court finds that the City has demonstrated relevancy of the tax information as to the question of Valles' allegation that Detective Lopez made material misrepresentations in the affidavit in support of the search warrant.  The Court further finds that Valles did not affirmatively show that other sources exist from which the City could obtain the requested financial information.  Thus, the Court will compel production of the requested tax information limited to the question of

7

whether Detective Lopez made material misrepresentations about illegal drug activities at Valles' residence. The documents will be produced in accordance with an agreed upon confidentiality order.

Request for Production No. 9 asks Valles to produce his employment/work records, along with hours worked and total wages paid for five years leading up to the incident at issue. Plaintiff provided the same answer to document request No. 9 as he provided in response to No. 6. *See* discussion *infra*.

Valles further argues in his response brief that the request, which also asks for employment evaluations and disciplinary records, is "highly intrusive" and overly burdensome and seeks information that is not relevant. The Court agrees and will not compel the requested production.

Request for Production No. 12 asks Valles to produce "copies of any photograph, or similar pictorial or graphic representation or videotape in your possession . . . which relate in any way to any fact or issue related to this lawsuit." Valles' answer referred the City to his response to "number 3." The City did not provide a copy of Valles' response to document request No. 3. However, in its supporting brief, the City states that a witness testified that she videotaped inside the residence in question after the search warrant was executed. [Doc. 36, Ex. C, Dep. of Crystal Vialpando.] The City argues that the videotape is probative of the reasonableness of the execution of the search warrant. The City also seeks sanctions with respect to this request, claiming that Valles had to have known about the videotape but did not disclose its existence in his discovery responses.

Valles responded that he never possessed the videotape and that it had been in possession of his girlfriend Angie Griego but that at Ms. Griego's deposition, she told counsel the tape was accidentally destroyed. Valles further asserts that he never knew about the videotape until Ms. Griegos' deposition.

The Court cannot compel production of something that either does not exist or no longer exists. *See* Fed. R. Civ. P. 34. However, the Court can assess sanctions if it determines a party intentionally destroyed or withheld relevant evidence. The Court denies the request for sanctions on this occasion but advises the parties that destruction of relevant evidence is sanctionable under Rule 37(b)(2) of the Federal Rules of Civil Procedure and/or if there is evidence of bad faith destruction of relevant evidence that gives rise to an inference that the production of such evidence would have been unfavorable to the party responsible for its destruction. Aramburu v. Boeing Co., 112 F.3d 1398, 1407 (10th Cir.1997).

## Conclusion

For the above stated reasons, Defendant City's motion to compel is granted in part and denied in part.

IT IS THEREFORE ORDERED that the City of Albuquerque's Motion to Compel [Doc. 35] is granted in part and denied in part as described herein. Where the Court has ordered production of information, those responses should be served on Defendant City by no later than ten days after entry of this Order.

*[signature]*
Lorenzo F. Garcia
Chief United States Magistrate Judge